UNITED STATES of America, Appellee,

v.

Richard M. PENTA,
Defendant, Appellant.

No. 89–1919.

United States Court of Appeals,
First Circuit.

Heard Feb. 7, 1990.

Decided March 16, 1990.

**816**

Frances L. Robinson with whom Davis, Robinson & Smith was on brief, for appellant.

Scott R. McIntosh, Appellate Staff, Civil Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Douglas N. Letter, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., were on brief, for appellee.

Before BREYER, ALDRICH and CYR, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This case raises, in sharp focus, the breadth of meaning of "discussions" as used in Fed.R.Crim.P. 11(e), that holds inadmissible in evidence statements made to a United States Attorney by a defendant, including before indictment, in certain circumstances.

(e) *Plea Agreement Procedure.*

(1) *In General.* The attorney for the government and the attorney for the defendant or the defendant when acting pro se *may engage in discussions with a view toward reaching an agreement* that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

. . . .

(6) *Inadmissibility of Pleas, Offers, and Related Statements.* Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of *statements made in connection with, and relevant to, any of the foregoing pleas or offers,* is not admissible in any civil or criminal proceedings *against the person who made the plea or offer.* (Emphasis, except in titles, supplied).

■ Effective December 1, 1980, for subparagraph (6) there was substituted the following,

(6) *Inadmissibility of Pleas, Plea Discussions, and Related Statements.* Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the *defendant who made the plea or was a participant in the plea discussions:*

(A) a plea of guilty which was later withdrawn;

(B) a plea of nolo contendere;

(C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or,

(D) *any statement made in the course of plea discussions* with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. (Emphasis, except in title, supplied).

The question is whether this rule excludes statements made by a defendant (one not yet indicted, but who fell within the rule's compass) to a United States Attorney, and an investigator, with whom he had a number of conferences, during which time the attorney was openly trying to build a case against defendant's associates, and, in the attorney's unexpressed belief, defendant felt, or at least feared, that he, too, would be indicted, and "was trying to get us to agree not to prosecute him, or get us to agree that we would recommend probation or a minimum jail sentence," but defendant

made no such request, and the attorney made no offer. The relevant conversation was as follows.

The attorney told defendant it would be in his best interests to tell candidly and completely. Defendant asked if he cooperated, and gave documentation, "What is going to happen to me?" "My response was along the lines I'm not going to promise you anything. I can't tell you how we're going to resolve this thing. The ball is in your court one hundred percent.... He kept wanting to know what would happen to him."

Q. And your statement to him?

A. No promise would be made. It was solely his decision, voluntary, one hundred percent on his part.

Q. And that would be evaluated at sentencing?

A. In what we would agree to—the idea was, again, that this would be resolved through plea agreement; that his cooperation would be taken into account, and that what we would recommend would be lessened.

Defendant did not testify. The ambiguity (or possible error in transcription) of the last answer, was not pursued. Obviously "would be resolved through plea agreement," was not correctly put. It was not responsive to anything said before, and, at most, must have meant, "could," or "would, if there were such," just as the final clause meant, "would be lessened if there were such."

We hold this was not a plea discussion within the rule, and that, there being no other obstacles, the court did not err in admitting the conversations.

Courts have long recognized that plea bargaining is essential to the functioning of the criminal justice system. "Properly administered," the Supreme Court has stated, "it is to be encouraged," *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), "and can benefit all concerned." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977). Some of the benefits include:

The defendant avoids extended pretrial incarceration and the anxieties and un-

certainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources.

*Id.* But "all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor." *Santobello,* 404 U.S. at 261, 92 S.Ct. at 498. Rule 11 is designed to ensure the fairness of the plea bargaining process and to encourage frank plea discussion between the parties. *Rachlin v. United States,* 723 F.2d 1373, 1376 (8th Cir.1983), but, we believe, discussions means plea discussions, and not simply anything that might ultimately lead to such.

Before the 1979 amendment, Rule 11(e)(6) made inadmissible any "statements made in connection with, and relevant to" a plea or offer to plea. This language led to decisions such as *United States v. Herman,* 544 F.2d 791 (5th Cir.1977), where the defendant made an offer to plead guilty to lesser charges in exchange for dropping the murder charge to Postal Inspectors who had no official negotiating authority for the government. Finding that the defendant "made the statements during the course of a conversation in which he sought concessions from the government in turn for a guilty plea," *id.* at 798, the court determined that Rule 11(e)(6) required no more. If the defendant or putative defendant believed he was engaged in plea negotiations, his statements were inadmissible at trial.

Not every court read Rule 11(e)(6) so expansively, and the Fifth Circuit soon abandoned *Herman's* entirely subjective test. In *United States v. Robertson,* 582 F.2d 1356, 1365 (5th Cir.1978), the court identified the problem—"Plea negotiations are inadmissible, but surely not every discussion between an accused and agents for the government is a plea negotiation"—and formulated a two-part objective test for admissibility:

The trial court must apply a two-tiered analysis and determine, first, whether

the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

*Id.* at 1366. *Robertson's* two-tiered approach has been adopted in several circuits. *See, e.g., United States v. Grant,* 622 F.2d 308, 312 (8th Cir.1980); *United States v. O'Brien,* 618 F.2d 1234, 1240–41 (7th Cir.), *cert. denied,* 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980); *United States v. Pantohan,* 602 F.2d 855, 857 (9th Cir.1979). But *cf. United States v. Sikora,* 635 F.2d 1175, 1175–76 (6th Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980) (more complex approach).

When Congress amended Rule 11(e)(6) in 1979, it had a body of experience to draw on in redrafting the inadmissibility language. As the Advisory Committee notes make clear, it rejected *Herman's* subjective interpretation:

> The present language is susceptible to interpretation which would make it applicable to a wide variety of statements made under various circumstances other than within the context of those plea discussions authorized by rule 11(e) and intended to be protected by subdivision (e)(6) of the rule.

The pre-amendment language could incorrectly be interpreted to make "an otherwise voluntary admission to law enforcement officials inadmissible merely because it was made in the hope of obtaining leniency by a plea." The amendment was intended to narrow the scope of the rule and "identif[y] with more precision than the present language the necessary relationship between the statements and the plea or discussion." Fed.R.Crim.P. 11(e)(6) Advisory Committee note, 1979 Amendment.

While the amended rule rejects *Herman,* it embraces neither *Robertson's* two-tiered test nor *Sikora's* multi-factored approach. Most courts have simply applied the plain language of the rule to the facts before

them and have had little difficulty identifying the demarcation line between admissible and inadmissible statements. Thus in *United States v. Jorgensen,* 871 F.2d 725, 730 (8th Cir.1989), the court said there was no plea bargaining when defendant thought "the surest means of limiting his punishment was to speak candidly [and there was] no evidence that the officers made direct or implied promises other than to inform other law enforcement authorities of Jorgensen's cooperation." In *United States v. Porter,* 821 F.2d 968, 976–77 (4th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988), the court said that where the officer explicitly said he had no authority to make a deal, defendant's making "statements as an informant, hopeful of getting a break," was not within the rule. *See also, United States v. Sebetich,* 776 F.2d 412, 421 (3d Cir.1985), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988).

In other words, plea discussions means plea discussions. To the extent that *United States v. Serna,* 799 F.2d 842, 849 (2d Cir.1986), *cert. denied,* 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987), indicates that a "preliminary discussion must be considered as part of the overall plea bargaining process," we do not agree. We believe the rule was amended because of the realization that not only was there no need to go beyond a finite interpretation, but that once one did, there was no legitimate place to stop.[1] Defendant has no valid claim.

■ Defendant's other points have been considered, but only one calls for comment. If the court's excluding both of two periods from the 70 maximum number of days permitted by the Speedy Trial Act, 18 U.S.C. § 3161, was error, the prosecution should have been dismissed. The first of these delays was occasioned by virtue of the transfer of the case for trial from Springfield, Massachusetts, to Boston. Section 3161(h)(1)(G) permits excluding the time required for transfer from "another district." This was not such. We cannot accept the

---

1. Presumably, it takes two to tango. We do not, however, face the possible question of whether it is a discussion when a might-be-defendant

"discusses" the conditions under which he might plead in the presence of a disclaiming, and otherwise mute, audience.

holding of *United States v. Glasser,* 773 F.2d 1553, 1557 (11th Cir.1986), that to claim a difference between "inter-district" and "intra-district" is "overly technical;" nor the court's suggestion that a local rule could wipe out the difference—which ours does not purport to, in any event.

 On the other hand, where the government showed that the second claimed period was due to the "absence or unavailability of . . . an essential witness," within § 3161(h)(3), the court's citing the wrong subsection in so finding was a mere clerical mistake, and this exclusion was proper.

*Affirmed.*