UNITED STATES of America,
Plaintiff–Appellee,

v.

John L. CHEEK, Defendant–Appellant.

No. 92–1668.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1993.

Decided Aug. 23, 1993.

Barry R. Elden, Asst. U.S. Atty., Stephen Heinze (argued), Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Cynthia Giacchetti, Chicago, IL (argued), for defendant-appellant.

Before BAUER, Chief Judge and KANNE, Circuit Judge and ALDISERT, Senior Circuit Judge.*

ALDISERT, Senior Circuit Judge.

Like most of us, John Cheek, does not like to pay taxes. Unlike most of us, however, he has refused to pay them. As a result of his refusal to pay federal income taxes, Mr.

---

* Ruggero J. Aldisert, of the United States Court of Appeals for the Third Circuit, sitting by designation.

Cheek has been a frequent visitor to our courts.

On several occasions, Mr. Cheek has attempted to persuade the district courts of this Circuit and, on one occasion, this court to declare federal income taxes and the withholding of Social Security and tax contributions unconstitutional. Not only were his attempts unsuccessful, but he was required to pay $1,500 in attorney's fees, $5,000 in sanctions under Rule 11, Federal Rules of Civil Procedure, for filing a frivolous lawsuit and $1,500 as sanctions under Rule 28, Federal Rules of Appellate Procedure, for filing a frivolous appeal.[1]

Mr. Cheek has been party to criminal proceedings before us as well. In 1987, Cheek was charged in a superseding indictment with six counts of willfully failing to file a federal income tax return for the years 1980, 1981, and 1983 through 1986, in violation of 26 U.S.C. § 7203. He was further charged with three counts of willfully attempting to evade his income taxes for the years 1980, 1981 and 1983 in violation of 26 U.S.C. § 7201. On November 12, 1987, Cheek was convicted by a jury on all counts and sentenced to jail for a year and a day. On appeal, we affirmed his conviction, *United States v. Cheek*, 882 F.2d 1263 (7th Cir.1989), but the Supreme Court reversed it on the basis of erroneous jury instructions, *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), the Court holding that a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness, irrespective of whether the claimed belief is objectively reasonable.

In 1992, following a second jury trial before another district judge, who instructed the jury in strict accordance with the Supreme Court's new formulation of willfulness, Cheek was again convicted on all counts, was sentenced to jail for a year and a day and was fined $62,000. It is from the conviction upon retrial and sentence that he now appeals.

Other questions are presented, but essentially Cheek argues that the district court erred by refusing to instruct the jury on a reliance of counsel defense, that his due process rights were violated when a heavier penalty was imposed after his second trial, and that his indictment should have been dismissed because the time limitations of the Speedy Trial Act were not observed. We will affirm the judgment of the district court in all respects.

Jurisdiction was proper in the trial court based on 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291 following the filing of a timely appeal under Rule 4(b) of the Federal Rules of Appellate Procedure.

## I.

Cheek had been a pilot for American Airlines since 1973 and filed federal income tax returns through 1979 but thereafter ceased to file returns, except for 1982, when he filed a frivolous return. Prior to 1980, while employed by American Airlines, Cheek filed an Internal Revenue Service W–4 form claiming 25 withholding allowances. In 1980, he changed the number of withholding allowances on his W–4 first to 39 and then to 60.[2] The IRS and Cheek exchanged correspondence regarding his bizarre W–4 forms. The

---

1. *See, e.g., Schaut v. United States*, 585 F.Supp. 137 (N.D.Ill.1984) (Cheek was one of five unsuccessful plaintiffs filing a complaint at No. 82 C 2304 alleging that the withholding of taxes from their wages and payment of those taxes violated the Sixteenth Amendment); *Cheek v. Doe*, 110 F.R.D. 420 (N.D.Ill.1986) (Cheek unsuccessfully filed a complaint at No. 85 C 10351 contending that the withholding of income and social security taxes amounted to an unconstitutional taking and that wages are not taxable income. He was ordered to pay the United States $1,500 in costs and attorney's fees and $10,000 as a Rule 11 sanction for filing a frivolous lawsuit. On appeal, 828 F.2d 395 (7th Cir.), *cert. denied*, 484

U.S. 955, 108 S.Ct. 349, 98 L.Ed.2d 374 (1987), we affirmed the dismissal, reduced the sanction to $5,000 to comport with the maximum amount the Tax Court may levy, and imposed a Rule 28 sanction of $1,500 for filing a frivolous appeal.); *see also Cheek v. Internal Revenue Serv.*, 703 F.2d 271 (7th Cir.1983) (Cheek unsuccessfully attempted to obtain confidential tax return information from the IRS under the Freedom of Information Act, 5 U.S.C. § 552).

2. Cheek received wages as an American Airlines pilot in the amount of $67,221.61 in 1983 and $75,145.75 in 1984.

IRS eventually sent a letter to Cheek stating that his W–4 with 39 exemptions was unacceptable. In December of 1980, an American Airlines tax attorney advised Cheek that he was not exempt from withholding and suggested that he seek advice of competent counsel.

From 1981 through 1984, with Cheek continuing to file W–4 forms claiming totally exempt status, Cheek and American Airlines corresponded regularly. Eventually, the IRS notified American Airlines not to honor the W–4s filed by Cheek, and American Airlines thereafter withheld the proper deductions from Cheek's wages. What followed over the course of several years was a series of lawsuits filed by Cheek against various defendants, including his employer, individual employees of American Airlines, the Commissioner of Internal Revenue and various IRS employees, in an attempt to prevent the withholding of any taxes from his wages. For example, in 1984 he joined with others in an abortive attempt to seek a judgment against the Commissioner of Internal Revenue declaring that the withholding of taxes from their wages and the payment of these taxes violated the Sixteenth Amendment. *Schaut v. United States*, 585 F.Supp. 137 (N.D.Ill.1984). In 1985, he sued several IRS employees, seeking reimbursement of income and social security taxes withheld by American Airlines, contending that "the withholding of income and social security taxes amounted to an unconstitutional taking of property and that his wages [were] not taxable income." *Cheek v. Doe*, 110 F.R.D. 420, 421 (N.D.Ill.1984). All of these suits were dismissed with prejudice.

Cheek described his various lawsuits as an attempt to prove his belief that the law did not require him to pay tax on what he described as his right to work. In addition to pursuing his own lawsuits, Cheek also attended the criminal tax trials of various friends and associates. All of these trials resulted in convictions. *See United States v. Kalita*, 712 F.2d 1122 (7th Cir.1983).

Cheek testified that many of his actions were based on legal advice. Throughout the time period covered in the indictment, Cheek claims to have conferred with several attorneys regarding his research, beliefs and lawsuits.

On March 13, 1992, after his second trial, Cheek was sentenced by Judge Zagel to one year and one day imprisonment, and he was placed on five years probation. The conditions of probation were that he cooperate with the IRS in a civil determination of his tax liabilities, that he pay all back taxes, interest and penalties, and that he file current tax returns. Finally, Cheek was ordered to pay a fine of $62,000 immediately, a fine that included costs of incarceration and supervision.

The sentence imposed by Judge Zagel in the second trial was essentially the same as that imposed by Judge Plunkett in the first trial, except for the imposition of the fine.

## II.

■ The standards utilized in reviewing the issues presented are familiar. " '[W]hether a jury has been properly instructed is to be determined not upon consideration of a single paragraph, sentence, phrase or word, but upon the charge as a whole.' " *United States v. Doerr*, 886 F.2d 944, 960 (7th Cir.1989) (quoting *United States v. Alexander*, 743 F.2d 472, 478 (7th Cir.1984)). So long as the instructions " 'treat the issues fairly and accurately,' they will not be disturbed on appeal." *Id.* (quoting *United States v. Thibodeaux*, 758 F.2d 199, 202 (7th Cir.1985)). If the defendant fails to object to a jury instruction in the trial court, the standard of review is plain error. *United States v. Windsor*, 981 F.2d 943, 946 (7th Cir.1992). "A plain error is not just one that is conspicuous but one whose correction is necessary to prevent a 'miscarriage of justice.' " *United States v. Young*, 470 U.S. 1, 15 and n. 12, 105 S.Ct. 1038, 1046 and n. 12, 84 L.Ed.2d 1 (1985).

■ In reviewing the district court's refusal to give Cheek's proposed jury instruction, we seek to determine if Cheek was prejudiced by the refusal. *United States v. Grier*, 866 F.2d 908, 932 (7th Cir.1989). However, "[i]n order to preserve for appeal an objection to a district court's refusal of a proposed jury instruction, 'a defendant must

object, on the record, to the judge's refusal to tender the defendant's instructions, and must clearly state the reasons for his or her objections.'" *United States v. Marrinson,* 832 F.2d 1465, 1473 (7th Cir.1987) (quoting *United States v. Douglas,* 818 F.2d 1317, 1320 (7th Cir.1987), *cert. denied sub nom. Pruitt v. United States,* 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989)). Merely submitting alternative instructions is not sufficient. *Id.* If the objection does not amount to a clear statement, then the district court's refusal to tender an instruction must be analyzed under the plain error standard of review. *Id.*

Congress has mandated that the clearly erroneous standard of review be applied to findings of fact in the sentencing context. 18 U.S.C. § 3742(e); *see also United States v. Beal,* 960 F.2d 629, 632 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992).

■ "Our determination of whether the Speedy Trial Act was violated requires us to review the district court's interpretation of that act." *United States v. Montoya,* 827 F.2d 143, 146 (7th Cir.1987). Thus, an appellate court reviews de novo a district court's speedy trial calculation. *United States v. Nesbitt,* 852 F.2d 1502, 1512 (7th Cir.1988), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989).

### III.

Cheek first argues that the district court erred in its jury instructions in three respects: in refusing to give an instruction based on an advice of counsel defense, in not properly instructing according to the Supreme Court's teachings in *Cheek* and in not instructing as to the appropriate use of certain evidence.

### A.

■ At trial Cheek testified that his actions after 1982 were the result of "bum legal advice." Tr. at 1140. He argues that three different attorneys advised him that the tax

system was based on voluntary compliance and that his many previous lawsuits were dismissed for procedural rather than substantive reasons.[3] Under these circumstances, he contends that he was entitled to a jury instruction on the advice of counsel defense.

According to the government, the evidence presented by Cheek fell short of satisfying the requirements of the defense. It contends that Cheek sought confirmation of his own view of the tax laws rather than independent legal advice, that he sought such opinions after he had already chosen his course of conduct, that several attorneys told him that his conduct could lead to criminal sanctions, and that the majority of the testimony undermined rather than supported the advice of counsel defense.

■ In order to establish an advice of counsel defense, a defendant must establish that:

(1) before taking action, (2) he in good faith sought the advice of an attorney whom he considered competent, (3) for the purpose of securing advice on the lawfulness of his possible future conduct, (4) and made a full and accurate report to his attorney of all material facts which the defendant knew, (5) and acted strictly in accordance with the advice of his attorney who had been given a full report.

*Liss v. United States,* 915 F.2d 287, 291 (7th Cir.1990). A crucial element in this defense is that "defendant secured the advice on the lawfulness of his *possible future conduct.*" *United States v. Polytarides,* 584 F.2d 1350, 1352 (4th Cir.1978).

Cheek testified that he received the advice of at least three different attorneys on the status of the tax laws, but we are not satisfied that he sought or received advice on "possible future conduct." He did not seek any advice until after 1980, when he first failed to file proper tax returns. Furthermore, Cheek had been told by the IRS, American Airlines personnel and by at least one court that his contentions were without

---

**3.** In *Cheek v. Doe,* 110 F.R.D. at 421, the district court specifically stated that regardless of its procedural inadequacies, "this case is frivolous

on the merits. The constitutionality of the income tax laws, enacted pursuant to the Sixteenth Amendment, has long been established."

merit prior to his discussions with counsel.[4] Reduced to its essence, the record indicates that Cheek merely continued a course of illegal conduct begun prior to contacting counsel. *See Polytarides*, 584 F.2d at 1353 (good faith reliance on advice of counsel defense was not available when defendant had taken significant steps toward the illegal activity and had been warned of its illegality prior to seeking advice of an attorney). In addition, at least one attorney, Robert L. Collins, testified that Cheek sought his opinion solely for the purpose of protecting himself in the event he was indicted. Tr. at 721.

Nowhere does Mr. Cheek contend either that he made a full and accurate report as to his tax status to any attorney or that he "acted strictly in accordance with the advice of his attorney." In *United States v. Becker*, 965 F.2d 383, 388 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1411, 122 L.Ed.2d 783 (1993), we held that an advice of counsel instruction was unwarranted where there was no evidence that the defendant fully disclosed his position to his lawyer or that he followed the specific advice of his attorney. Defendant Becker attempted to rely on a legal memorandum from attorney Collins discussing the constitutionality and voluntary nature of the current tax system, the same exact memorandum Cheek relies on here.

Moreover, attorney Susan Keegan testified that she discussed with Cheek "more or less" that he was required to obey the law until he was told by a court that the law in question was not valid. Tr. at 900. He admittedly did not follow this advice. Attorney Andrew Spiegel testified that he told Cheek that the courts were interpreting the tax laws as requiring the filing of income tax returns, that wages were considered income subject to taxation and that it was possible that Cheek would be prosecuted criminally for not filing a tax return. Tr. at 579–81. Attorney Adrian Flipse told Cheek that she could not prove his theory of taxation one way or the other.

None of these attorneys advised him not to file tax returns. To the contrary, each advised him that he might be criminally prosecuted if he failed to file. *See, e.g.*, Tr. at 855 (attorney Keegan); Tr. at 580 (attorney Spiegel). Accordingly, on the basis of the evidence presented, the district court did not err in refusing to give a jury instruction on the advice of counsel defense.

### B.

■ The government contends also that even if the evidence could be construed to support the theory of good faith reliance on counsel, the jury instructions as a whole were sufficient to encompass that theory. It is well settled that a criminal defendant is entitled to have the jury " 'consider any theory of the defense which is supported by law and which has some foundation in the evidence, however tenuous.' " *United States v. Kelley*, 864 F.2d 569, 572 (7th Cir.) (quoting *United States v. Grimes*, 413 F.2d 1376, 1378 (7th Cir.1969)), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 23 (1989). He is not entitled, however, to a particular instruction on that theory. "[T]he defendant is entitled only to have his *theory*, if supported by the evidence, considered by the jury." *Id.*

The tax offenses with which Cheek was charged are specific intent crimes that require the defendant to have acted willfully. Thus, the district court instructed the jury that, in order to find him guilty, they had to find that the defendant acted knowingly and willfully. The court defined "willfully" as meaning the "voluntary and intentional violation of a known legal duty or the purposeful omission to do what the law requires." Tr. at 1980. The jury was further instructed that a "defendant does not act willfully if he believes in good faith that he is acting within the law or that his actions comply with the law." Tr. at 1989. According to the government, this instruction on willfulness necessarily encompassed Cheek's theory of good faith reliance on counsel's advice.

---

4. Cheek attended the trial of Henry J. Kalita, who was indicted for willfully failing to file tax returns. Kalita defended his conviction on Fourth and Fifth Amendment grounds. He was indicted in 1981 and convicted on all counts in early 1982. *See United States v. Kalita*, No. 81 CR 127, 1985 WL 1970 (N.D.Ill. June 28, 1985).

In *United States v. Kelley,* 864 F.2d at 573, we determined that the district court's instructions on willfulness encompassed the defendant's theory of good faith reliance on counsel's advice, thus obviating the need for an additional instruction. In *Kelley,* the district court had defined willfully as "voluntarily and intentionally with the purpose of avoiding a known legal duty." *Id.*

We are satisfied that on the basis of the trial record the court's instructions did "treat the issues fairly and accurately," and, therefore, they should not be disturbed on appeal. *Doerr,* 886 F.2d at 960 (quoting *Thibodeaux,* 758 F.2d at 202).

### C.

■ We also conclude that the court properly instructed the jury on "willfulness" and reject Cheek's contention that the district court erred by focusing the jury on the objective factor of "reasonableness." The court instructed, *inter alia:*

> A defendant does not act willfully if he believes in good [faith] that he is acting within the law or that his actions comply with the law. Therefore, if defendant actually believed that what he was doing was in accord with the tax statutes, he cannot be said to have had the criminal intent to willfully evade or defeat taxes or to willfully fail to file tax returns. This is so even if defendant's belief was not objectively reasonable as long as he held the belief in good faith. Nevertheless, you may consider whether the defendant's stated belief about the tax statutes was reasonable as a factor in deciding whether he held that belief in good faith.

Tr. at 1989.

In *United States v. Becker,* 965 F.2d at 388, this court found a virtually identical instruction to be "an accurate summary of *Cheek* that appropriately focused the jury's attention on whether the defendant had a good-faith belief he was acting lawfully." In *Cheek,* 498 U.S. at 203–204, 111 S.Ct. at 611–612, the Court noted that "the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than sim-ple disagreement with known legal duties imposed by the tax laws."

### D.

In a related argument, Cheek contends that by instructing the jury that a number of his beliefs were wrong or irrelevant, the court destroyed his defense based on a good faith belief in the legality of his actions. Specifically, he claims that the court erred by telling the jury that his belief that Section 6020 permitted the Secretary of the Treasury to prepare a tax return for a person did not negate "in any way" the obligation to file a tax return. In *Cheek,* 498 U.S. at 206, 111 S.Ct. at 613, the Court specifically held that "in a case like this, a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard them would be proper."

On retrial, the court here did not say that Cheek's understanding of the law was irrelevant but rather that his view did not accurately reflect the state of the law. *See United States v. Powell,* 955 F.2d 1206, 1213 (9th Cir.1992) (the jury cannot be allowed to decide on its own whether Section 6060(b) somehow makes lawful the failure to file a return; therefore, the district court must make the unlawful conduct clear). The district court did not commit error by instructing the jury as to the actual state of the law.

### E.

■ In addition, Cheek questions the court's jury instructions regarding the use of certain evidence to determine his state of mind. During the trial, the government introduced various judicial rulings, including the opinions filed in the cases in which Cheek participated as a party and as an observer. Although these rulings were introduced solely on the issue of Cheek's state of mind, Cheek contends that the district court erred by not instructing the jury that each opinion only related to his state of mind after he became aware of it. In other words, he contends that the jury should have been instructed that this evidence could not be considered with respect to every count.

It is not clear whether this objection was raised by Cheek at trial. Whether considered under plain error or abuse of discretion standards of review, however, the contention is without merit. The district court specifically instructed the jury:

Each count and the evidence relating to it should be considered separately and a separate verdict should be returned as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to any other count.

Tr. at 1991.

" '[W]hether a jury has been properly instructed is to be determined not upon consideration of a single paragraph, sentence, phrase or word, but upon the charge as a whole.' " *Doerr*, 886 F.2d at 960 (quoting *Alexander*, 743 F.2d at 478). So long as the instructions " 'treat the issues fairly and accurately,' they will not be disturbed on appeal." *Id.* (quoting *Thibodeaux*, 758 F.2d at 202).

Cheek makes no specific allegations that any of the instructions given by the judge were not "fair and accurate." Instead, he makes the bald assertion that, because there was no instruction that each reference to a previous court opinion could relate only to specific charges, the jury could have improperly considered them. We disagree. The instruction given by the district court as to each separate count seems eminently sufficient.

## IV.

After his second trial, Cheek was ordered to pay a fine, although no fine was imposed after his first trial. We now must consider whether the imposition of the fine upon retrial violated his due process rights under the Fifth Amendment. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

In *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081, the Court created a presumption of vindictiveness when a defendant is given a greater sentence by the same sentencing authority after a retrial, unless the reason for doing so "affirmatively appears." The hold-ing in *Pearce* has been severely limited by subsequent judgments of the Court. In *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), the Court held that the presumption of vindictiveness is not present when a different judge imposes the second sentence. In such circumstances, "a sentence 'increase' cannot truly be said to have taken place." *Id.* at 140, 106 S.Ct. at 979. The Court reasoned that the "vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial.", *Id.* at 138, 106 S.Ct. at 978–979.

Because Cheek was tried and sentenced by a different judge in his second trial, the presumption of vindictiveness is not present. When, as here, there is no reasonable likelihood of vindictiveness, the burden is on defendant to prove actual vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799–800, 109 S.Ct. 2201, 2204–2205, 104 L.Ed.2d 865 (1989) (citing *Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984)). We are persuaded that the appellant did not meet his burden.

In the present case, we cannot say that the judge "more likely than not" was motivated by vindictiveness, because there was sufficient justification for the heavier sentence. *Alabama*, 490 U.S. at 802, 109 S.Ct. at 2206. Judge Zagel identified two aggravating facts that arose subsequent to Cheek's original trial, justifying the higher sentence: In acting as his own counsel, he repeatedly refused to comply with the judge's rulings during the trial, and he demonstrated what the court described as his "hypocrisy" in saying that he was willing to abide by the Supreme Court's judgment and then refusing to do so. For example, at sentencing the district court stated:

His basic reason for not paying the taxes, not filing the returns were because of beliefs about the constitutionality of the tax system. At the very best the permitted defense, one about statutory confusion, was if made at all, made only in the most cursory fashion.

Indeed, Mr. Cheek himself characterized during his testimony as his various constitutional views being the primary views and

the statutory considerations being secondary ones. Secondary is a very charitable characterization of it from the point of view of Mr. Cheek's testimony. So I think what was at the heart of his view of his position remained the constitutional issues. And he took the position in the course of his testimony and perhaps he even took this position at the first trial, I don't know, that he was pursuing his views and pursuing his claim until such time as somebody showed him an opinion of the Supreme Court of the United States that said he was wrong.

It's an argument with some powerful appeal to a jury, which does not frequently understand that Supreme Court opinions are not the only thing you have to obey. Mr. Cheek I think had some difficulty accepting that he had to obey decisions other than Supreme Court ...

But in this case what became clear at this trial is that there was an opinion of the Supreme Court of the United States that did tell him after the first trial that his views were not a defense. In fact, you can look at the language of the Supreme Court and draw, I think, a fairly clear inference that the Supreme Court thought his arguments were worthless. And yet despite that opinion, which was unusual for any case, directed expressly to Mr. Cheek, because it was an opinion in his case, he still persisted.

And what concerns me is that there is significant evidence that his long standing assertion, made perhaps at the first trial and certainly made at this trial, that he was perfectly willing to abide by the decisions of the Supreme Court of the United States was an act of hypocrisy.

Tr. at 2015–16. In addition, the court told Cheek:

You were in this particular area kind of a hard-case criminal. You just wouldn't stop. You wouldn't listen. You wouldn't listen to the IRS. You wouldn't listen to the courts. You simply engaged in stubborn and willful refusal to obey the law.

Tr. at 2036.

The record fully supports the district court's findings. Accordingly, we find no due process violation.

## V.

Finally, Cheek argues that the trial did not commence in time and that he was, therefore, entitled to a dismissal of the indictment. Section 3161(e) of the Speedy Trial Act requires that a trial "shall commence within seventy days from the date the action occasioning the retrial has become final." 18 U.S.C. § 3161(e). The parties agree that the speedy trial clock began to run on May 29, 1991, when the mandate issued and the case was remanded by this court. It ended 222 days later on January 6, 1992, the first day of the retrial. We now must consider the time excludable under the Speedy Trial Act computation.

The parties agree that the following time periods are excluded under the Act:

July 17, 1991 to July 19, 1991

July 19, 1991 to August 2, 1991

August 15, 1991 to August 23, 1991

August 23, 1991 to September 23, 1991

September 24, 1991 to November 4, 1991

Appellant's Br. at 35. Thus, the parties agree that a total of 99 days should be excluded, leaving 123 days in dispute. The government contends that all but 50 of the 123 days are excludable under Section 3161(h) and that, therefore, the trial was commenced within the time period required.

### A.

First, the government contends that the period from June 17 to July 2 should be excluded under Section 3161(h)(1)(G), which provides for "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure." 18 U.S.C. § 3161(h)(1)(G). According to the government, these 16 days related to the intradistrict transfer of Cheek's case from Judge Plunkett to Judge Zagel pursuant to local District Court General Rule 44. On June 17, the district court issued a notice to the parties giving them 10 days to file a joint motion agreeing that the case should be returned to the original trial

judge. When no motion was filed by June 27, the case was referred to the Executive Committee of the District Court and an order was entered on July 2 transferring the case to Judge Zagel. Cheek responds that no order was entered excluding the time, and therefore it is not excludable.

Whether the time elapsed during an intra-district transfer is excludable under Section 3161(h)(1)(G) is a question of first impression for us. It has divided the courts of appeals. *Compare United States v. Glasser*, 773 F.2d 1553, 1557 (11th Cir.1985) (intra-district transfer excludable) *with United States v. Penta*, 898 F.2d 815, 818–19 (1st Cir.) (not excludable), *cert. denied*, 498 U.S. 896, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990). We agree with the Court of Appeals for the Eleventh Circuit that the statutory language "delay resulting from any proceeding relating to the transfer of a case" is "broad enough on its face to cover delays caused by proceedings relating to the intra-district transfer of a case." 773 F.2d at 1557. Thus, the 16 days between June 17 and July 2 are excludable, leaving 37 days beyond the statutory maximum still in dispute.

### B.

■ Next the government notes that the district court granted continuances to Cheek to obtain an attorney through the months of July and August. According to the government, the district court "inadvertently" did not issue a written order reflecting that a continuance issued on August 2 excluded time between August 3 through August 14. The government claims that the court made the required finding that the delay was in the interest of justice to give Cheek time to try to locate a lawyer. Cheek contends that because the trial court did not file an order that this 13 day period be excluded, it cannot be excluded now.

Section 3161(h)(8)(A) specifically authorizes the exclusion of time for any delay resulting from a continuance granted by any judge if the "court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). We are satisfied that the record confirms the government's position. Tr. dated January 6, 1992 at 5. The 12 days between August 3 and 14 are excludable, leaving 25 days still in dispute.

### C.

■ The government then contends that the period from October 30 through December 5 is excludable because the court had taken Cheek's numerous pretrial motions under advisement during that time, adding 31 days of excludable time. Section 3161(h)(1)(F) excludes delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

According to the government, on October 16 the defendant filed 24 pretrial motions, and the government filed a consolidated response to these motions on October 29. On November 12 and 13, the judge ruled on some but not all of defendant's pending pretrial motions. On December 5, the court issued a written opinion disposing of 20 of the defendant's pretrial motions.[5] *United States v. Cheek*, No. 87 CR 161, 1991 WL 287034 (N.D.Ill. Dec. 5, 1991). Although Cheek filed 24 pretrial motions on one day, he contends that the court was required to rule on all of them within 30 days, citing Section 3161(h)(1)(J) "delay attributable to any period, not to exceed thirty days, during which any proceeding concerning the defen-

---

5. Among the 20 motions addressed by Judge Zagel was a motion to "exclude all non-white jurors for cause" on the grounds that blacks were not originally included in the Constitution and would thus be incapable of applying notions of original intent. A similar motion was filed by Cheek prior to his first trial. In that instance, he filed a motion demanding an "all white Christian male judge." When this motion was denied without comment by the court, Cheek filed an emergency request for a writ with five Associate Justices and the Chief Justice of the Supreme Court seeking a stay of all proceedings in the district court until a written order had been issued. Given this history, Judge Zagel was well advised to take the time to reduce his judgment to writing in order to avoid further delays.

dant is actually under advisement by the court." The court took 50 days to do so.

The government concedes that this period is longer than the 30–day period described in Section 3161(h)(1)(J), but contends that the entire period is excludable under the law of this circuit.

Previous judgments of this court demonstrate that Cheek's argument is overly technical and totally unacceptable. In *United States v. Tibboel,* 753 F.2d 608, 612 (7th Cir.1985), we held that in a case of multiple pretrial motions the limitation is not 30 days but "reasonable promptness." We concluded that the district court would not have been acting unreasonably if it decided the defendant's seven pretrial motions within 42 days of filing. *See also United States v. Latham,* 754 F.2d 747, 753 (7th Cir.1985) (68 days is a reasonable amount of time for the district court to consider eight pre-trial motions).

Here, 50 days is not an unreasonable amount of time for the district court to decide 24 pretrial motions. Therefore, an additional 31 days should be excluded. According to our calculations, the subtraction of an additional 31 days leaves less than 70 days between our remand and the subsequent trial.

The trial judge did not err by denying the defendant's motion to dismiss the case for violation of the Speedy Trial Act. The defendant's trial was held within 70 days of the remand, excluding delays allowed under the statute.

We have considered all the contentions raised by the appellant. To the extent not discussed herein, his other arguments have been considered and rejected.

The judgment of the district court is AF-FIRMED.