**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jodi GLASSER, Defendant-Appellant.**

No. 84–5781.

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1985.

Joel Hirschhorn, Miami, Fla., for appellant.

Stanley Marcus, U.S. Atty., Neil Karadbil, Linda Hertz, David O. Leiwant, Asst. U.S. Attys., Miami, Fla., for appellee.

Before HILL and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

Jodi Glasser was charged in a twenty-count indictment with embezzling mortgage payments in violation of 18 U.S.C. §§ 647, 2 and making false entries in the records of the Broward Federal Savings and Loan ("the Bank") in violation of 18 U.S.C. §§ 1006, 2. A jury convicted Glasser on all counts. On appeal, Glasser contends her convictions should be reversed because the indictment should have been dismissed under the Speedy Trial Act; the indictment improperly alleged aiding and abetting as a theory of conviction; and

because the district court made several erroneous evidentiary rulings. We affirm.

## I

Glasser was employed as a mortgage loan supervisor at the Bank from May 1981 until her termination in August 1982. On August 9, 1982, one of the Bank's customers notified the Bank that he had not received credit for a mortgage payment he had made. The following day, David Woellner, the Bank's director of internal auditing, asked Glasser for the customer's loan file. The loan history indicated that a payment had been missed, but the account was not shown to be delinquent. No delinquency was reflected because someone using Glasser's teller number [1] had used the Bank's computer to advance the payment's due date by one month. Bank records also indicated that the customer's check had been cashed [2] on the same day the payment's due date was advanced on the computer.

Woellner then asked Glasser to gather additional information concerning the customer's file. One item Glasser was asked to produce was the mortgage department's check log (which is a daily updated register listing checks received and accounts credited) for the dates in question. Glasser, whose responsibilities included maintaining the check log, told Woellner that the check logs were missing.

On August 11, someone using Glasser's teller number made fifty to sixty computer transactions in an effort to balance the customer's account. On the same day, Glasser purchased several money orders. She told her supervisor that she purchased the money orders to apply to a customer's account. Glasser's supervisor told her it was not her problem, and not to worry about it. At Glasser's request, her supervi-

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Each teller was assigned an identification number. The number had to be used whenever a computer entry was made on the Bank's computer. These numbers were supposed to be kept confidential. This practice was not, however, routinely followed.

2. At the trial, teller Lourdes Taylor testified that she had cashed a number of checks made payable to the Bank for Glasser. Teller Debbie Klein testified that she had cashed two checks made payable to the Bank at Glasser's request.

sor cashed the money orders for her. Glasser told another Bank employee that "she just wanted the whole thing to go away," and "that she felt like just paying the money, and forgetting the whole thing."

On August 12, Woellner met with Glasser in his office. When asked what she knew about the situation she became agitated, upset, and defensive. Glasser asked Woellner if she could pay the amount of the deficiency to take care of the situation. Glasser's employment was terminated eight to ten days later. In the investigation that followed, it was learned that a number of other defalcations had occurred. The same method was used for effectuating each of the defalcations: a check for a mortgage payment would arrive in the mail; instead of being credited to the customer's account, the check would be cashed; then, the payment's due date would be advanced on the Bank's computer so that the account would not appear to be delinquent.

Glasser was originally charged in an eighty-eight count indictment. Forty-four of the counts alleged embezzlement; the remaining forty-four counts charged Glasser with falsifying the Bank's records in connection with the separate instances of embezzlement. On January 27, 1984, the district court dismissed the indictment, without prejudice, on Speedy Trial Act grounds.

Glasser was subsequently reindicted on a twenty-count indictment alleging ten acts of embezzlement and ten acts of having made false entries. Each of the twenty counts included an aiding and abetting violation. The jury convicted Glasser on all twenty counts. This appeal followed.

## II

Glasser's first contention on appeal is that the indictment should have been dismissed under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. The order of events supporting this assertion are not in dispute. The first indictment on which Glasser was charged had been assigned to, and was dismissed by, Judge Paine on January 27, 1984. Glasser was arraigned on the second indictment on February 15, 1984. When the indictment was refiled the clerk of the court assigned the case to Judge Gonzalez. The local rules of the Southern District of Florida, however, provide that:

> Whenever an action or proceeding is terminated by entry of a notice or order of dismissal and is refiled without a substantial change in issues or parties, it shall be transferred to the judge to whom the original was assigned.

S.D.Fla. Local R. 6(A). Thus, under the local rules, the case should have been assigned to Judge Paine.

The assignment error came to the attention of Judge Gonzalez on April 13 during the call of the calendar for the period commencing April 16, 1984. On April 16, Judge Gonzalez issued an order transferring the case back to Judge Paine. The order stated that:

> the period of delay attributable to the granting of this motion, i.e., the period of time from April 16, 1984, to the date on which the order of transfer is entered by Judge Paine, shall be deemed excludable time within the provisions of the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(G), on the grounds that this delay results from the transfer of this case under the Federal Rules of Criminal Procedure and the Local Rules for the United States District Court for the Southern District of Florida.

The order also states that "the oral motion for continuance ... is GRANTED." The order does not specify, and the record does not reflect, which party made the oral motion for continuance.

■ Under the Speedy Trial Act, a defendant must be tried within seventy days after the later of (1) the filing date of the information or indictment or (2) the defendant's first appearance before a judicial officer. *United States v. Stafford*, 697 F.2d 1368, 1370 (11th Cir.1983); 18 U.S.C. § 3161(c)(1). However, certain periods are excluded when computing the date on which the trial must commence. *See id.* at § (h). The parties agree that the seventy day period began to run in this case on

February 15, 1984, the date on which Glasser was arraigned on the second indictment. The parties also agree that absent any excludable time, Glasser should have been tried no later than April 25, 1984, seventy days after her arraignment.

Glasser filed a motion to dismiss the indictment on April 30, 1984, contending that the Speedy Trial Act's seventy day requirement had been exceeded. Judge Paine issued an order denying the motion. The order makes reference to Judge Gonzalez' order transferring the case to Judge Paine, and states that "[t]he period of time from April 16, 1984, through April 30, 1984, which is the date on which this Court accepts the transfer of [this] case is excludable time for the purposes of the Speedy Trial Act." In his order, Judge Paine adopted Judge Gonzalez' conclusion that the delay occasioned by the transfer was excludable time under 18 U.S.C. § 3161(h)(1)(G). The parties agree that the Speedy Trial Act's seventy day requirement was not satisfied if the time between April 16 and April 30 was improperly excluded. Thus, the issue presented is whether delay occasioned by the intra-district transfer of a case can be excluded when computing the time in which a trial must commence.

Glasser contends that none of the periods of delay described in section 3161(h) are applicable. We disagree. The district court relied on subsection (h)(1)(G), which provides that excludable time includes "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure." Glasser construes the provision to be applicable only if "the transfer of a case" or "removal of any defendant" is "from another district." In other words, Glasser argues that the provision is applicable to inter-district transfers only, not to intra-district transfers made pursuant to a local rule.

■ Glasser's argument on this score is overly technical. We read subsection (h)(1)(G) as excluding time caused by delay resulting from proceedings "relating to the transfer of a case," or "the removal of any defendant from another district under the Federal Rules of Criminal Procedure." It is, therefore, broad enough on its face to cover delays caused by proceedings relating to the intra-district transfer of a case. Moreover, this provision would be applicable here even if construed to require that the transfer be made "under the Federal Rules of Criminal Procedure." The Rules of Criminal Procedure authorize district courts to promulgate local rules. *See* FED. R.CRIM.P. 57(a). "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with [the] rules or with any applicable statute." *Id.* § (b). The local rule requiring the transfer in this case was lawfully promulgated under Rule 57; no argument is made that the local rule is inconsistent with the federal rules or any federal statute. Consequently, the transfer of Glasser's case was made, at least derivatively, under the federal rules. This is sufficient for the purposes of subsection (h)(1)(G). The district court did not err in excluding the fourteen days required to effectuate the transfer of Glasser's case.

### III

■ Glasser's next argument concerns the inclusion of an aiding and abetting charge in each count of the indictment. The first ten counts of the indictment charged Glasser with embezzlement under 18 U.S.C. § 657; the second ten counts charged her with making false entries (in connection with the instances of embezzlement charged in the first ten counts) under 18 U.S.C. § 1006. Each of the twenty counts also charged Glasser with aiding and abetting by reference to 18 U.S.C. § 2. Prior to trial, Glasser moved to have the indictment dismissed or to strike the inclusion of the aiding and abetting allegations because she was the only person named in the indictment. This argument was urged again in Glasser's motion for acquittal at the close of the government's case, and at the close of all the evidence. Each of these motions was denied by the district court. Glasser also objected to the jury instruc-

tions which were given on aiding and abetting. Glasser argues that the inclusion of the aiding and abetting counts, in conjunction with the instructions on aiding and abetting, call for reversal because the evidence fails to show that any additional person was involved in the commission of the charged offenses.

In support of this assertion Glasser relies on *United States v. Martin,* 747 F.2d 1404 (11th Cir.1985). While *Martin* does lend some support to Glasser's view, we are not persuaded that it is dispositive. In *Martin,* a three count indictment charged the defendant with arranging to plant drugs on, and filing false reports against, an IRS agent in order to discredit the agent and impede his investigation. The evidence showed that the defendant had asked two of his employees to purchase drugs and plant them in the agent's car. The first employee, Norwood, refused; the second employee, Grist, accepted the money and believed the defendant was serious when he made the request, but never purchased the drugs. The first count of the indictment charged the defendant with possession with intent to distribute controlled substances, attempt to possess with intent to distribute, and aiding and abetting. The second count charged the defendant with attempting to intimidate the IRS agent by attempting to plant drugs in his automobile, and aiding and abetting.[3]

The court concluded that the indictment was rendered defective due to the inclusion of the aiding and abetting allegation. The court noted that defects in an indictment can be cured by instructions or constitute only harmless error. *Id.* at 1407. The instructions relevant to the aiding and abetting allegations—which were identical to those given in the instant case—did not cure the defect. Nor was it the case that only harmless error resulted from the inclusion of the aiding and abetting charges and instructions relevant thereto:

> The jury could have concluded that [defendant's] actions, alone (or in combination with actions of Grist and Martin) were sufficient to constitute the principal crime of attempt to possess. But, bearing in mind the evidence of aborted efforts by [defendant] to get someone else to acquire possession of contraband and plant it in the agent's car, the jury may have concluded that [defendant's] actions (either alone or in combination with those of Grist and Norwood) simply did not progress far enough beyond preparation to cause [defendant] to be guilty as principal for the substantive crime of attempt. If so, the jury, unable to find all elements of the principal offense, may have turned to aiding or abetting, which need not include all elements of the principal offense.

*Id.* at 1408.

In the instant case, it is not possible that the jury "may have turned to aiding and abetting" in order to find all of the elements of the substantive offenses with which Glasser was charged. There were no other participants in the scheme whose actions the jury could have considered in concluding that each of the elements of both substantive offenses were present. Thus, while the indictment was rendered defective by virtue of the aiding and abetting allegations, any resulting error was harmless.

## IV

Glasser contends that the district court made various evidentiary rulings which warrant reversal. "Determinations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion." *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983). None of the rulings of which Glasser complains constitute an abuse of discretion.

Glasser first complains of the admission of computer printouts. These computer printouts contained compilations of various

---

**3.** The third count did not include an aiding and abetting count, and is therefore not relevant to

the instant case.

transactions relating to the mortgage accounts which were the basis of the prosecution. Glasser contends that the trustworthiness of the printouts was not established through proper foundation testimony, and that the printouts should have therefore been excluded.

■ Computer generated business records are admissible under the following circumstances:

> (1) The records must be kept pursuant to some routine *procedure* designed to assure their accuracy, (2) they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and (3) they must not themselves be mere accumulations of hearsay or uninformed opinion.

*Rosenberg v. Collins,* 624 F.2d 659, 665 (5th Cir.1980) (citing *United States v. Fendley,* 522 F.2d 181, 184 (5th Cir.1975)). Having reviewed the record, and, in particular, the testimony of David Woellner (the Bank's director of internal auditing), we conclude that these conditions were satisfied. We note that while Woellner's testimony provided a sufficient foundation upon which to admit the printouts, it also demonstrated some weaknesses in the security measures taken by the Bank to control access to the computer terminals. On this score, Glasser points to the fact that teller identification numbers were not kept confidential. The existence of an air-tight security system is not, however, a prerequisite to the admissibility of computer printouts. If such a prerequisite did exist, it would become virtually impossible to admit computer generated records; the party opposing admission would have to show only that a better security system was feasible. The government laid a sufficient foundation for the admission of the printouts;

thus, the district court did not abuse its discretion in admitting this evidence.

■ Glasser next contends that the district court erred in excluding evidence tending to establish that she was not responsible for several of the defalcations which were charged in the first indictment. The first indictment contained eighty-eight counts, and referred to defalcations occurring on forty-four different occasions. Through cross-examination of government witnesses, and during the defense portion of the case, Glasser sought to introduce evidence tending to show that she was absent from the Bank on four of the dates referred to in the first indictment. The district court excluded this evidence under Rules 402 (relevancy) and 403 (exclusion of relevant evidence because of prejudice, confusion, or waste of time) of the Federal Rules of Evidence.

By introducing this evidence, appellant sought to show that under circumstances in some respects identical to those surrounding the defalcations of which she was convicted in this case, she could not possibly have been the guilty party. Considered in isolation, the fact that appellant did not commit other similar offenses does not tend to prove that she did not commit the ones at issue in this case. We emphasize, however, that evidence that appellant could not have been responsible for other defalcations occurring under identical circumstances might well constitute relevant evidence.[4] In other words, the relevance of the kind of negative evidence appellant sought to introduce at trial must depend ultimately on its tendency to diminish the probative value of credible circumstantial evidence of appellant's guilt. If appellant can show that the jury may have convicted her on the basis of circumstantial evidence,

---

4. Rule 401 of the Federal Rules of Evidence defines "relevant evidence" broadly to include all evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. This definition has been construed to impose two requirements, both of which must be met before evidence is admitted: "(1) The evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Hall,* 653 F.2d 1002, 1005 (5th Cir. Unit A 1981). Determinations of admissibility of evidence rest largely within the discretion of the district court and are not to be disturbed on appeal in the absence of a clear abuse of discretion. *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983).

which would have been rendered less compelling by the evidence she sought to introduce, the proffered evidence would be relevant.

Assuming arguendo that the proffered evidence was relevant, we nevertheless conclude that the district court did not abuse its discretion in excluding it. As an alternative basis for exclusion, the district court determined that the evidence would be likely to confuse rather than aid the jury in its deliberations. We find no abuse of discretion in this case, where there was clear evidence [5] of appellant's involvement in at least some of the defalcations such that the proffered evidence would have tended to show merely that *someone else* may have been involved *also,* and where the potential for confusing the jury was real.

■ Next Glasser argues that a mistrial should have been granted because of the prosecutor's repeated attempts to elicit hearsay answers from witness Debbie Klein, a teller at the Bank. Klein testified that Glasser brought a check made payable to the Bank to her window, and that she cashed the check for Glasser after writing "For Jodi" in the index at the bottom of the check. Klein also testified that another teller, Lourdes Taylor, once brought her a check made payable to the Bank, and that Taylor asked her to cash the check because Taylor did not have enough money in her drawer. Klein testified that she also made the notation "For Jodi" on this check. Klein was not permitted to testify as to the reasons Taylor gave for wanting her to cash the check; nor was Klein permitted to testify as to why she made the notation on this check. The prosecutor asked several questions geared toward determining what Taylor told Klein about the check. The district court sustained Glasser's hearsay objections to these questions. We are not persuaded that the prosecutor's repeated attempts to elicit hearsay answers from Klein warrants reversal. Taylor had previously testified that Glasser had brought her a check, and that she took it to Klein

because she did not have enough money in her drawer to cash the check. Thus, the inference to be drawn from the prosecutor's questioning—that Glasser had asked Taylor to have Klein cash the checks—was already established by the evidence. Similarly, Klein testified that on another occasion she had written "For Jodi" on a mortgage check Glasser had asked her to cash. This testimony would also support the inference to be drawn from the prosecutor's questions. As Klein was not permitted to answer the improper questions, and since the inference to be drawn from the questioning was established by other evidence, any error resulting from the questioning was clearly harmless.

■ Glasser's next contention concerns a question asked by the prosecutor during the direct examination of Janice Feirstein, another employee at the Bank. Feirstein had been asked by Woellner to research the mortgage accounts after it was discovered that a problem existed. The prosecutor asked Feirstein whether "any loan problems" had occurred after August 10, 1982. The district court, in a somewhat confused side bar discussion, had already sustained Glasser's objection to any testimony concerning events occurring after August 10, 1982 (which was the last date referred to in the indictment), and did not permit Feirstein to respond. Glasser then moved for a mistrial. Glasser argues that the mere asking of the question permitted the jury to infer that the defalcations stopped after she stopped working at the bank. While we agree that the question was improper in light of the district court's prior ruling, we are not persuaded that it calls for reversal. The prosecutor's question did not compel the inference suggested by Glasser. Moreover, the district court instructed the jury not to draw any inference from the question. This instruction cured any resulting error.

■ Glasser's last contention concerns testimony given by Robin Moussette, the

---

5. That evidence included certain incriminating statements and actions of the appellant, including evidence that appellant cashed several of the checks whose diversion was the object of the defalcations with which she was charged.

Bank's receptionist. Moussette testified that her duties included sorting and keeping a log of all the checks received by the Bank through the mail. She also testified that a separate log of mortgage checks received was kept by the mortgage department, and that Glasser was the person in the mortgage department responsible for maintaining the log. Over Glasser's objection, Moussette was permitted to testify that the mortgage department's check logs had been lost, and that someone in the Bank had approached her in an effort to locate the logs. Glasser contends this testimony was hearsay, and that it prejudiced her case by implying that she had stolen the logs. We are not persuaded by this contention. Woellner had previously testified that Glasser was responsible for maintaining the check logs. He also testified that the logs had turned up missing, and that Glasser had told him they were missing. Moussette's testimony on this score, even if erroneously admitted, was cumulative of Woellner's testimony. Consequently, any error resulting from the admission of Moussette's testimony was harmless.

V

For the foregoing reasons, Glasser's convictions are affirmed.

AFFIRMED.