[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-13074

Non-Argument Calendar

————————————————

SYNCHRONY BANK,

Plaintiff-Appellee,

*versus*

CABINETS TO GO, LLC,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-21828-KMM

————————————————

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Cabinets to Go appeals the district court's award of $6,135,384.11 in lost profits damages to Synchrony Bank. It argues that the district court abused its discretion in admitting five of Synchrony's exhibits and in crediting Synchrony's expert witness as reliable. Because the district court did not abuse its discretion, we affirm.

## I.

Synchrony, a savings and loan association, and CTG, an appliance retailer, entered agreements whereby Synchrony would provide financing options to qualified CTG customers and CTG would commit to Synchrony as its only credit provider. But CTG ended up signing a new financing agreement with Wells Fargo. As a result, Synchrony sued for breach of contract, and the district court granted summary judgment in its favor.

The district court then held a two-day bench trial on the remaining issue of damages. The trial involved the testimony of two witnesses for Synchrony: Kari Pfarrer, the company's vice president of financial planning and analysis, and Andrew Kaplan, a certified public accountant and master analyst in financial forensics. With no objection from CTG, the district court qualified Kaplan as an expert in the area of lost profits analysis.

Pfarrer testified at length regarding the fundamental components of the financial arrangement between Synchrony and CTG. When doing so, she presented several exhibits that relied on financial data sourced from Synchrony. These exhibits include Exhibit 6, a table setting forth calculations of Synchrony's lost earnings; Exhibit 8, a financial workbook that contains, among other things, multiple tabs of a detailed spreadsheet calculating Synchrony's damages; Exhibit 8A, a "pay-down curve" that projects accounts receivable data; Exhibit 10, a chart that details the cost per active account for 2021; and Exhibit 28, a chart that reproduces CTG purchase volume data from Synchrony's records and applies a growth projection. The district court described these exhibits as reflecting data "created in the ordinary course of business" and "stored internally" within Synchrony's systems. For his part, Kaplan testified that he prepared his expert report after multiple interviews with Synchrony personnel and a review of pertinent documents and information, including these exhibits. Both Pfarrer and Kaplan were thoroughly cross-examined by CTG and found credible by the district court.

The district court entered a 19-page order awarding Synchrony lost profits damages of $6,135,384.11. CTG appealed.

## II.

"The district court's decision to admit evidence is reviewed for abuse of discretion." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1347 (11th Cir. 2020). "The abuse of discretion standard allows for a range of choice, and that means that sometimes we

will affirm even though we might have decided the matter differently in the first instance." *Doe v. Rollins Coll.*, 77 F.4th 1340, 1347 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1056 (2024).

## III.

CTG raises two issues on appeal. First, it argues that the district court abused its discretion in admitting exhibits that were neither business records nor summaries under Federal Rules of Evidence 803(6) and 1006. Second, it asserts that Kaplan's testimony was unreliable because it relied on the challenged exhibits. We take each issue in turn.

### A.

CTG argues that five of Synchrony's exhibits—6, 8, 8A, 10, and 28—are neither business records nor summaries. Accordingly, CTG argues that the exhibits reflect inadmissible hearsay. We disagree.

We'll start with the business records exception to the hearsay rule. A record is admissible under the business records exception to hearsay if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business; and (C) making the record was a regular practice of that activity. *United States v. Clotaire*, 963 F.3d 1288, 1293 (11th Cir. 2020); Fed. R. Evid. 803(6).

A compilation of computer-maintained data may itself be a business record. We have held that "computer data compilations

may be business records themselves, and should be treated as any other record of regularly conducted activity"—so long as they satisfy three requirements. *United States v. Lamons*, 532 F.3d 1251, 1264 n.3 (11th Cir. 2008); *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980). Those requirements are that the records be "kept pursuant to some routine procedure designed to assure their accuracy," "created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive)," and not "mere accumulations of hearsay or uninformed opinion." *United States v. Glasser*, 773 F.2d 1553, 1559 (11th Cir. 1985).

CTG argues that these exhibits were improperly admitted because the data was not kept in the ordinary course of business. But Pfarrer testified—and the district court found—that the underlying financial data reflected in each exhibit was timely, credible, sourced from Synchrony's computer system, and created and maintained in the regular course of business. That finding is consistent with both our review of the record and our precedents. *See Glasser*, 773 F.2d at 1559 (holding that computer-generated business records were admissible and that the testimony of the business's director was a sufficient foundation for their admission). Indeed, CTG itself recognized the reliability of several challenged exhibits when it either relied on them during the trial or stipulated to other exhibits that contained the same underlying data.

CTG's next argument—that Pfarrer could not personally verify the accuracy of Synchrony's data—fares no better. We have recognized that "[a]ny person in a position to attest to the

authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records." *Rosenberg*, 624 F.2d at 665. The extent of Pfarrer's personal knowledge on this point affects the weight—instead of the admissibility—of the evidence. And as Synchrony's vice president of financial planning and analysis, Pfarrer was competent to attest to the records.

Lastly, CTG contends that the exhibits were prepared in anticipation of litigation. Again, we disagree. The underlying data at issue was prepared in Synchrony's ordinary course of business, not for litigation. To the extent the exhibits reflect a summary of that underlying data, they were admissible as compilations or summaries under Rule 1006. *See United States v. Markovich*, 95 F.4th 1367, 1378 (11th Cir. 2024) ("Summaries are admissible so long as they are supported by evidence in the record.") (internal marks omitted); *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1265 (11th Cir. 2015) (explaining that Rule 1006 allows for the use of summaries, charts, or calculations "to prove the content" of voluminous evidence that cannot be conveniently examined). None of the challenged exhibits fall outside the purview of both Rules 803(6) and 1006.

CTG cites several precedents that either reiterate these points or concern inapposite issues. *See, e.g.*, *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1161 (11th Cir. 2004) (holding that a district court abused its discretion in admitting an exhibit where "the

23-13074                Opinion of the Court                7

underlying materials or information on which [the] [e]xhibit . . . was based were not admissible"); *Noble v. Alabama Dep't of Env't Mgmt.*, 872 F.2d 361, 366 (11th Cir. 1989) (determining that the foundation for the admissibility of a letter was inadequate because the witness merely testified "that he had seen the letter before"); *United States v. Thomas*, 315 F. App'x 828 (11th Cir. 2009) (holding that spreadsheets were not admissible where the underlying information was created by a third party, not offered into evidence, and never inspected by opposing counsel). These precedents are consistent with our decision today. The district court did not abuse its discretion in admitting the challenged exhibits.

## B.

CTG's second contention is that the district court abused its discretion by crediting Kaplan's testimony. According to CTG, that testimony was unreliable because it relied on the challenged exhibits and the data that supported them. We disagree. For starters, CTG did not preserve this argument. Nowhere in the record did CTG object to the district court's consideration of Kaplan's testimony—not before, during, or after trial. CTG argues that it implicitly objected when it amended and resubmitted its pretrial proposed findings, but the district court expressly noted in its closing order that the admissibility of Kaplan's testimony was undisputed. *See United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006) (explaining that, to preserve an objection for appeal, the statement must be "clear enough to inform the district court of the legal basis for the objection"). In any event, we have already held that the

district court did not abuse its discretion in admitting the challenged exhibits. That conclusion on CTG's first argument nullifies its second.

## IV.

The judgment of the district court is **AFFIRMED.**