[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-12379

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHNSON SAINT-LOUIS,
a.k.a. H-WRONG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cr-00063-RH-MAF-1

_____

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Johnson Saint-Louis appeals his convictions and sentence for armed bank robbery and brandishing a firearm during and in relation to that crime of violence. He argues that the district court abused its discretion by admitting evidence of uncharged crimes and erred in giving the jury supplemental instructions on aiding-and-abetting liability. He also raises allegations of ineffective assistance against trial counsel. After careful review, we hold that the court did not abuse its discretion in admitting evidence of substantially similar uncharged bank robberies under Federal Rule of Evidence 404(b), and that defense counsel's closing argument based on an incorrect legal theory necessitated the court's supplemental instruction. We decline to consider the claims of ineffective assistance on direct appeal.

## I. Background

In December 2021, a federal grand jury returned an indictment charging Saint-Louis with armed bank robbery, *see* 18 U.S.C. § 2113(a) & (d), and brandishing a firearm during and in relation to a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A)(ii).[1] The charges

_____

[1] The indictment also charged money laundering, *see* 18 U.S.C. § 1957, but the district court dismissed that count at trial on the government's motion.

stemmed from the robbery of a Bank of America ATM in Tallahassee, Florida, on September 29, 2021.

A.  *The government seeks to admit evidence of uncharged robberies.*

In October 2022, the government filed a pretrial motion to admit evidence under Federal Rule of Evidence 404(b).  According to the government, the charged offense was part of a string of similar robberies committed by Saint-Louis, a former ATM technician.  Thus, to prove that Saint-Louis was the Tallahassee robber, whose identity was concealed, the government sought to introduce evidence of three similar uncharged ATM robberies allegedly committed by Saint-Louis in November 2019, February 2021, and August 2021, as well as Saint-Louis's related surveillance activity.  During a hearing, the district court ruled that the incidents involving other ATMs were admissible to prove identity, modus operandi, or knowledge under Rule 404(b).

B.  *Saint-Louis requests substitute counsel, which the court denies.*

The trial was held over three days in November 2022.  On the morning the trial began, Saint-Louis expressed to the court that he did not want to proceed with appointed defense counsel.  Saint-Louis cited a lack of communication and claimed that he was not ready for trial.  Defense counsel maintained he was ready for trial, explaining that he had met with Saint-Louis four or five times, mostly in the last week, and had otherwise responded to Saint-Louis's letters and provided all discovery requested.  Based on Saint-Louis's comments, the district court found no reason to think that defense counsel had failed to do something "he should have

done to be ready for trial" or had provided ineffective assistance. The court briefly delved into some of the substantive issues Saint-Louis raised before deciding to move forward with the trial.

## C. *The government proves its case.*

The government called sixteen witnesses to prove its case. Our review of the trial transcript indicates that eight witnesses testified only or primarily about the charged robbery; six witnesses testified about both the charged and uncharged robberies; and two witnesses testified only about the uncharged robberies.

Before the jury heard the evidence of uncharged conduct, the district court instructed the jury in detail on the proper use of such evidence. The court made clear that the only question before jurors was "whether the government has proven [Saint-Louis] guilty or not guilty" of the Tallahassee robbery, and that they "could not convict [him] of the Tallahassee transaction just because [they] found that he had committed similar transactions on other occasions." Instead, the court stated, jurors could consider the uncharged conduct only to "assess[] the state of his knowledge, whether something was done intentionally or accident[al]ly, the identity of who was involved in more than one transaction," and whether, due to the use of similar methods, "the same person did the events on those multiple occasions."

The government's evidence established that Saint-Louis, a former ATM technician, devised a scheme for stealing hundreds of thousands of dollars from ATMs. He scouted ATMs that his former employer serviced, looking for sufficiently secluded locations.

After selecting his target, he conducted one or more transactions at the machine late at night and jammed it—something he knew how to do from his days as an ATM technician. After jamming an ATM, Saint-Louis waited for the ATM technician to come to the machine and open its vault, as Saint-Louis knew would be required for the necessary repair. When the vault was open, he accosted the technician, who was alone in a secluded location. Saint-Louis brandished a handgun and took the money. The Tallahassee robbery was conducted in this same manner.

Near the end of the government's case, defense counsel objected that the government's Rule 404(b) evidence had become a feature of the trial and had overwhelmed the rest of the case. The district court overruled the objection but provided another instruction to the jury that it could not consider the evidence of uncharged robberies as evidence of Saint-Louis's character, but could consider the evidence to establish his identity or knowledge for the Tallahassee robbery.

D. *Defense counsel seeks acquittal based on a mistake in law, and the district court instructs the jury on aiding and abetting.*

During closing arguments, defense counsel proposed a unique theory of mistaken identity. Counsel appeared to concede that Saint-Louis was involved in the robbery, stating that it "would be just a little bit too hard to sell" that he "had nothing to do with it." But counsel asserted that Saint-Louis was not "charged with aiding a robbery," but rather with "being the robber," and that the "the government's own evidence suggest[s] these robberies were a

two-man job." So according to counsel, the jury would need to acquit if it had reasonable doubt that Saint-Louis was the person who physically robbed the ATM technician, even assuming he was otherwise involved in the robbery.

We note that defense counsel had made similar comments in his opening statement. For its part, the government's opening statement had noted that Saint-Louis was found in possession of handwritten notes about different ATM locations and short comments about each one, such as "too open," "open space," "no ATM outside," "not enough exit route," and "two-man job." But the government did not otherwise suggest that the charged robbery involved another person.

So at closing, the government interrupted defense counsel's argument to request a sidebar. Outside the jury's presence, the government advised that—in light of defense counsel's argument that Saint-Louis should be acquitted if he aided the robbery but was not the robber—it would be asking for an instruction on aiding-and-abetting liability. The government cited the well-established rule that aiding and abetting need not be charged in the indictment. *See, e.g.*, *United States v. Walker*, 621 F.2d 163, 166 (5th Cir. 1980) ("[O]ne who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense.").[2] The district court agreed with the

---

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

government that defense counsel had "asked the jury to acquit the defendant based on a misunderstanding of the law."

After discussing the issue at length with the parties, the district court stated that it would give an aiding-and-abetting instruction unless the defense asked for a mistrial, which the court said it would grant. Saint-Louis spoke with his attorney and then personally told the court that he wished to maintain an objection to the instruction and let the jury finish the case. He commented that he did not "see how I will get any upper hand or any type of relief on the second try."

Observing that Saint-Louis "wants to go forward," the district court called the jurors in and informed them that it would be adding an instruction on aiding-and-abetting liability. Yet, attempting to minimize any damage to the defense, the court advised the jury that the court had made a mistake by not including the language in its original jury instructions. The court stated that defense counsel was "arguing based on the instructions as I had compiled them originally," which was "my fault . . . , not his," and reiterated that the jury should decide the case based solely on the evidence.

Defense counsel then resumed his closing argument, stating that it was "kind of hard to back out of an argument once you have made it," but that his prior comments were hypothetical and that the evidence did not establish that Saint-Louis was guilty beyond a reasonable doubt. In rebuttal, the government noted that the "two-man job" note related to an ATM that "wasn't robbed," and that there was no evidence anyone else was involved in the charged

crime. It also argued that Saint-Louis was liable even if he aided and abetted the robbery.

The jury found Saint-Louis guilty on both counts.

*E. Saint-Louis requests, but is denied, a new trial.*

After the guilty verdict, Saint-Louis moved for a new trial, arguing, in relevant part, that it was fundamentally unfair to instruct the jury on a theory of the crime not charged in the indictment and not presented during the government's case. He also said that he did not comprehend that, by declining the mistrial, he was possibly subjecting himself to a conviction based upon that uncharged theory. His motion noted that defense counsel "may have invited said scenario."

The district court denied the motion. The court stated that defense counsel "brought this on himself" by misstating the law in his closing argument, and that while the court understood that providing an aiding-and-abetting instruction might impair counsel's standing with the jury, the court offered Saint-Louis the option of a mistrial, which he declined. The court also remarked that the evidence at trial established Saint-Louis's guilt "beyond any doubt, reasonable or otherwise," and that Saint-Louis had not suggested any colorable defense.

*F. Saint-Louis is sentenced.*

At sentencing, Saint-Louis, through new appointed counsel, alleged that trial counsel was ineffective and that, but for that ineffective assistance, he might have pled guilty or agreed to a mistrial.

The court observed that it had offered the defense a mistrial, and that Saint-Louis's allegations of ineffective assistance were more appropriate for a motion to vacate under 28 U.S.C. § 2255. Ultimately, the district court sentenced Saint-Louis to 63 months on the armed-robbery count and to 84 consecutive months on the brandishing count, for a total of 147 month' imprisonment. Saint-Louis now appeals.

## II. Discussion

Saint-Louis raises three arguments on appeal. First, he contends that the district court abused its discretion in admitting an "overwhelming and repetitious volume of 404(b) evidence." Second, he argues that the court erred in adding an instruction on aiding-and-abetting liability and failing to grant a mistrial. And finally, he contends that he received ineffective assistance at trial, though he concedes such a claim is ordinarily more appropriate for a 28 U.S.C. § 2255 motion and leaves the matter to our discretion.

A. *The district court did not abuse its discretion by admitting evidence of the uncharged robberies under Rule 404(b).*

Saint-Louis maintains that the evidence of uncharged robberies "crammed fact after fact, often the same fact three or four times from different witnesses, into the jury's mind [and] created a miasma of unfair prejudice" that "overpowered" the evidence's probative value.

We generally review evidentiary rulings for an abuse of discretion. *United States v. LeCroy*, 441 F.3d 914, 926 (11th Cir. 2006). Evidence is admissible under Rule 404(b) if (1) it is relevant to an

issue other than the defendant's character, (2) there is adequate proof the defendant committed the uncharged conduct, and (3) the evidence satisfies Rule 403's balancing test. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). That final determination "calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997) (quotation marks omitted).

These requirements are satisfied here. The evidence was relevant to several issues unrelated to Saint-Louis's character, including, most notably, identity. *United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015); *see* FED. R. EVID. 404(b)(2). The uncharged robberies share substantial similarities with the charged robbery that are not "common to armed bank robberies" generally. *United States v. Whatley*, 719 F.3d 1206, 1217–18 (11th Cir. 2013). Each robbery involved an ATM serviced by Saint-Louis's former employer and was preceded by a transaction on an account controlled by Saint-Louis corresponding with the jamming of the ATM, which generated an ATM error. When the technician opened the vault to service the error, the robber accosted the technician, who was alone in a secluded location, brandishing the firearm and then taking the money. In our view, the similarities between the charged and uncharged offenses, and lack of relevant dissimilarities, are sufficient to "mark[] the offenses as the handiwork" of Saint-Louis. *Id*. at 1217–18; *see Edouard*, 485 F.3d at 1344.

Nor can we say that the district court abused its discretion in concluding that the probative value of the Rule 404(b) evidence was not substantially outweighed by unfair prejudice. The probative value was high, given the similarities between the offenses and the shortage of other evidence to prove the identity of the Tallahassee robber, who wore a mask. *See Calderon*, 127 F.3d at 1332; *see also United States v. Harding*, 104 F.4th 1291, 1300 (11th Cir. 2024) ("Rule 404(b) is a rule of inclusion, and Rule 404(b) evidence should not lightly be excluded when it is central to the prosecution's case.") (quotation marks omitted); *Whatley*, 719 F.3d at 1218–19 (holding that substantially similar uncharged robberies were admissible to prove identity).

And while the evidence devoted to the uncharged offenses was substantial, Saint-Louis has failed to show that it "overwhelmed" the trial and prevented a fair verdict. The district court rejected that view, and the court was in the "best position to evaluate the prejudicial effect" of the evidence. *United States v. Perez*, 30 F.3d 1407, 1410 (11th Cir. 1994). What's more, "any unfair prejudice possibly caused by admitting evidence of [Saint-Louis's] prior [robberies] was mitigated by the district court's limiting instruction[s] to the jury," which explained the limited purposes for which the Rule 404(b) evidence could be used. *See Edouard*, 485 F.3d at 1346; *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

For these reasons, Saint-Louis has not shown that the district court abused its discretion by admitting evidence of the uncharged robberies to prove identity under Rule 404(b).

B.   *The district court did not err in instructing the jury on aiding-and-abetting liability or failing to grant a mistrial or retrial.*

Aiding and abetting is an "alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense," and it "need not be specifically alleged in the indictment." *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir. 1984). That's because 18 U.S.C. § 2 "does not define a crime. It simply makes punishable as a principal one who aids or abets the commission of a substantive crime." *Walker*, 621 F.2d at 166. Thus, a court does not err in giving an instruction on aiding and abetting "even though the defendant was not specifically indicted on that count." *Id.*

The district court has broad discretion in crafting jury instructions, so long as the charge does not misstate the law or mislead the jury in a way that prejudices the objecting party. *United States v. Seabrooks*, 839 F.3d 1326, 1333 (11th Cir. 2016); *United States v. Lopez*, 590 F.3d 1238, 1247–48 (11th Cir. 2009). Ordinarily, any changes to jury instructions should be made before closing arguments "to enable counsel to intelligently argue the case to the jury." *United States v. Clark*, 732 F.2d 1536, 1541 (11th Cir. 1984); FED. R. CRIM. P. 30(b). But "[a]t the same time, the court retains power to remedy omissions in pre-argument instructions or to add instructions necessitated by the arguments." *United States v.*

*Anderson*, 1 F.4th 1244, 1264 (11th Cir. 2021).  In other words, the court has a continuing "obligation to inform the jury of the law which properly governs a case."  *United States v. Pena*, 897 F.2d 1075, 1085 (11th Cir. 1990), *abrogated on other grounds by Coleman v. Singletary*, 30 F.3d 1420 (11th Cir. 1994).

In *Pena*, for example, the defendants argued that the district court reversibly erred by issuing a supplemental instruction stating the correct legal meaning of a "place outside the United States" for purposes of an importation offense.  *Id*. at 1084.  We held that the supplemental instruction was proper because it was "necessitated by defense counsel's blatant misstatement of the law" during closing argument.  *See id.*  We also noted that the change was not substantial and that, to the extent it repudiated or diminished the effectiveness of defense counsel's argument, ignoring the misstatement "would have resulted in a verdict reached in contravention to the law."  *See id.* at 1084–85.  We reasoned that closing arguments may not be used to "dictate the law by which a verdict is reached or to create a mistrial by erroneously stating the legal principles applicable to a given situation."  *Id*. at 1085.

Similarly, in *Anderson*, we upheld a supplemental instruction given by the district court in response to a closing argument by defense counsel that was "blatantly incorrect as a legal matter."  1 F.4th at 1266.  We held that the court "would have failed to fulfill its duty to correctly state the law for the jury had it not supplemented the approved jury instruction," and that the defendant had not been prejudiced as a result.  *Id*. at 1266–67.

Here, the district court did not err in instructing the jury on aiding and abetting under § 2. As in *Pena* and *Anderson*, the court's supplemental instruction was necessitated by defense counsel's closing argument for acquittal based on a clearly incorrect statement of the law. Defense counsel argued that the Tallahassee robbery was a "two-man job" and that Saint-Louis was not "charged with aiding," so the jury should acquit him if it found that he planned or aided the robbery but did not physically rob the ATM. But that argument plainly contradicts well-established law, which provides that "one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *Walker*, 621 F.2d at 166. Thus, the court's supplemental instruction on aiding and abetting was necessary to prevent "a verdict reached in contravention to the law." *Pena*, 897 F.2d at 1084–85.

Nor do we see any indication that Saint-Louis was prejudiced by the jury hearing about aiding-and-abetting liability. *See Anderson*, 1 F.4th at 1267; *Seabrooks*, 839 F.3d at 1333. The evidence did not credibly suggest that anyone besides Saint-Louis was involved in the criminal activity, and the government never argued as much.[3] Plus, Saint-Louis does not dispute the district court's assessment that the evidence against him was overwhelming and that he presented no colorable defense. *See United States v. Hornaday*,

---

[3] While defense counsel cited a note about a "two-man job," the note plainly referred to an ATM at a different address than the one at issue in the Tallahassee robbery.

392 F.3d 1306, 1316 (11th Cir. 2004) (holding that an error in instructing the jury on aiding-and-abetting liability was harmless where the "evidence of guilt was overwhelming"); *United States v. Glasser*, 773 F.2d 1553, 1557–58 (11th Cir. 1985) (holding it was harmless error to instruct on aiding and abetting where the defendant was the only person who engaged in the criminal activity).

Although the district court's instruction undermined the effectiveness of defense counsel's closing argument to some degree, Saint-Louis "does not argue that changing the jury instruction after his closing argument prevented him from presenting any point to the jury that could withstand judicial scrutiny." *Anderson*, 1 F.4th at 1267. He simply claims unfair surprise. But as we recognized in *Anderson*, defense counsel "had to foresee the possibility that the court would take corrective action once it realized" that defense counsel was arguing for acquittal based on a clear mistake of law. *See id.* Plus, the court gracefully attempted to deflect blame from defense counsel, informing the jury that the court had made a mistake by omitting the language from the original instructions. *See id.* at 1268 (approving of a similar course of action when issuing supplemental instructions based on closing arguments).

Finally, the district court did not err by failing to grant a mistrial or a retrial. Parties may not use closing arguments "to create a mistrial by erroneously stating the legal principles applicable to a given situation." *Pena*, 897 F.2d at 1084–85. Nonetheless, the court was sympathetic to Saint-Louis and offered to grant a mistrial, if requested by the defense. But Saint-Louis, after speaking with

defense counsel, informed the court he wished to move forward with the trial.  Having made that choice, Saint-Louis cannot now complain that the court chose to go forward without declaring a mistrial or ordering a new trial.  *See United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) ("Where a party invites error, the Court is precluded from reviewing that error on appeal.").  Insofar as Saint-Louis claims he did not understand the choice he was making, that matter is better resolved on collateral review under 28 U.S.C. § 2255, for reasons we explain in more detail below.

In sum, the district court did not abuse its discretion by issuing a corrective instruction on aiding-and-abetting liability that was necessitated by defense counsel's closing argument.

C.  *We decline to consider Saint-Louis's allegations of ineffective assistance of trial counsel, leaving the issue for a 28 U.S.C. § 2255 motion.*

We ordinarily review an ineffective-assistance-of-counsel claim *de novo* as a mixed question of law and fact.  *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002).  But we generally do not consider ineffective-assistance claims on direct appeal.  *Id.*  In most direct appeals, the record is "incomplete or inadequate" for litigating a claim of ineffective assistance.  *Massaro v. United States*, 538 U.S. 500, 504–05 (2003).  For that reason, ineffective-assistance claims are better handled in the context of a collateral attack on the conviction under 28 U.S.C. § 2255, where the district court can develop the facts necessary to evaluate the claim.  *United States v. Merrill*, 513 F.3d 1293, 1308 (11th Cir. 2008).

This is not a "rare" case where the record is developed enough to resolve Saint-Louis's claims on direct appeal. *See id.* The district court briefly addressed, but did not develop an evidentiary record about, the allegations of ineffective assistance Saint-Louis raised at trial, which included failing to adequately communicate or prepare for trial. And there has been no factual development for the allegations of ineffective assistance Saint-Louis raised for the first time at sentencing, which included jury tampering and failing to properly advise about the mistrial decision or a potential guilty plea. Because the current record is not complete or adequate to determine whether counsel's performance was defective or whether Saint-Louis was prejudiced as a result, Saint-Louis's claims of ineffective assistance, like most such claims, are better handled in the context of a § 2255 proceeding. *See Massaro*, 538 U.S. at 504–05.

We therefore affirm Saint-Louis's convictions and sentence without prejudice to Saint-Louis raising these claims in a collateral attack on his conviction under § 2255.

**AFFIRMED.**